**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**INNOVATION VENTURES, LLC**
**d/b/a LIVING ESSENTIALS,**
a Michigan limited liability company,

*Plaintiff*,

vs.

**N.V.E., INC.,**
a New Jersey corporation,

*Defendant*.

**HONORABLE TERRENCE G. BERG**

**CIVIL ACTION NO. 08-11867**

---


Mark A. Cantor (P32661)
Marc Lorelli (P63156)
Thomas W. Cunningham (P57899)
Chanille Carswell (P53754)
Brian C. Doughty (P71652)
**BROOKS KUSHMAN PC**
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Tel: (248) 358-4400 / Fax: (248) 358-3351
mcantor@brookskushman.com
mlorelli@brookskushman.com
tcunningham@brookskushman.com
ccarswell@brookskushman.com
bdoughty@brookskushman.com

*Attorneys for Plaintiff*

Leigh C. Taggart (P63765)
Emily J. Tait (P74708)
**HONIGMAN MILLER SCHWARTZ & COHN LLP**
39400 Woodward Avenue, Suite 101
Bloomfield Hills, MI 48304
(248) 566-8508
ltaggart@honigman.com

Anthony J. Davis
**NICOLL DAVIS & SPINELLA LLP**
95 Route 17 South
Suite 316
Paramus, NJ 07652
(201) 712-1616
ADavis@ndslaw.com

*Attorneys for Defendant*


---

**JOINT FINAL PRETRIAL ORDER**

The Court held a final pre-trial conference on January 26, 2016, a previous pre-trial conference on March 2, 2015, and two motion hearings on December 10, 2014 and December 9, 2015, during which the Court made rulings on various issues relating to the course of trial in this case. The Court also made numerous rulings as reflected in written Orders (e.g., Dkts. 404, 436, 440, and 447) that likewise govern the course of trial. Trial shall proceed according to the Court's rulings, and any further pre-trial rulings and rulings at trial, and as set forth herein. A jury trial is set to begin in this case on February 2, 2016 and shall conclude no later than March 3, 2016.

## I. JURISDICTION

The Court has subject matter jurisdiction over the claims of the present lawsuit pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a) being that this case arises under the trademark laws of the United States. Jurisdiction is not contested by the parties.

## II. PLAINTIFF'S CLAIMS AND DEFENSES

***Claims***

The claims of LE as described by Counsel for LE are as follows. LE alleges that NVE's 6 Hour Power product has and continues to willfully violate their trademark rights related to the 5-hour ENERGY shot under 15 U.S.C. 1125 (a). In 2004, Living Essentials ("LE") introduced a new type of energy drink product – a 2-ounce energy shot – under the trademark "5-hour ENERGY." LE's innovative new product was wildly successful. Sales and advertising grew month over month, and the 5-hour ENERGY product revolutionized the entire energy drink industry. Success breeds copies. Defendant NVE introduced a competing 2-ounce shot conveniently named "6 Hour POWER" several years later.

The NVE "6 Hour POWER" product was introduced by NVE in May of 2007 and was intended to and does compete directly with LE's 5-hour ENERGY product. The colors are similar. The bottle is similar. The formula is similar. The slogans are similar. The tag lines are similar.







**5-hour ENERGY** **6 Hour POWER**

"6 Hour POWER" was chosen by NVE because of its similarity to "5-hour ENERGY." This is a clear case of intentional trademark infringement.

There is no dispute that 5-hour ENERGY is protectable under the Lanham Act. In fact, it is the law of the case. The Sixth Circuit held that: "the '5-hour ENERGY' mark is suggestive and thus protectable." *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 730 (6th Cir. 2012).

Also, the evidence is strong that 6 Hour Power is *likely* to cause confusion with 5-hour ENERGY – there is rampant actual confusion. Factors to which evidence will be presented are: (1) the strength of the mark, (2) the relatedness of the goods offered by LE and NVE, (3) the similarity of the marks, (4) actual confusion, (5) the marketing channels used by the parties, (6) the probable degree of purchaser care and sophistication, and (7) NVE's intent in selecting 6 Hour Power. The evidence for each of these factors favors a finding of likelihood of confusion.

According to the Lanham Act, a successful plaintiff alleging trademark infringement may recover: (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. 15 U.S.C. §1117. LE is entitled to these damages and pre- and post- trial interest.

***Defenses to NVE's Counterclaim***

The defenses to NVE's counterclaim, as described by Counsel for LE, are as follows. NVE filed a counterclaim against Living Essentials alleging false advertising. The claim stems from a letter sent by LE. In another trademark suit, where LE sued N2G Distributing and Alpha Performance Labs, Judge Borman ordered the knockoff 6 Hour Energy shot recalled from store shelves. On May 29, 2008, LE distributed a letter to convenience stores and truck stops informing them that a "Court orders immediate stop to manufacturing,

distributing and sale of ***6 Hour Energy shot***" (hereinafter "the Letter'). (Emphasis added.) The Letter clearly stated that it was a decision against "a ***'6 Hour' energy shot*** that closely mimicked 5-hour ENERGY®." (Emphasis added.) This Letter was also advertised in trade publications.

The United States Court of Appeals for the Sixth Circuit determined that the Letter is not literally false. NVE argues that the Letter is "misleading." The Letter advises retailers to call their distributors or manufacturers. Thus, if any party had tried to return NVE's product because of the Letter – the Letter built in an opportunity for NVE to easily counter the alleged false advertising. NVE offers no evidence of any returned product and NVE's sales increased for months after the Letter.

In essence, NVE argues that people believed that "6 Hour POWER" was "a '6 Hour' energy shot that closely mimicked 5-hour ENERGY®." By its claim NVE concedes its own trademark infringement. And importantly, if NVE is liable for trademark infringement, then it has suffered no damages (and therefore cannot recover damages) for alleged lost sales it was never entitled to make in the first instance. Additionally, NVE's unclean hands by trading off Living Essentials' trademark rights precludes NVE's counterclaim.

Furthermore, NVE has not proven that the Letter "actually deceive[d] . . . a substantial portion of the intended audience." The letter was published in multiple trade journals and distributed to over 100,000 convenience stores. Yet, NVE offers only a few e-mails, which is insufficient to meet its heavy burden. Significantly, NVE performed no consumer survey to substantiate its claim and offers no testimony from any consumers.

NVE also has not proven causal injury. In order to recover marketplace damages, NVE must prove that any actual deception led to an actual change in purchasing decisions by the relevant individuals, in this case, individual store operators. NVE has no such evidence and, thus, is not entitled to marketplace damages. Specifically, there is no evidence that any of the over 100,000 convenience stores returned any 6 Hour POWER products or that any sales were lost as a result of the letter. Indeed, the Sixth Circuit held that "[a]fter the notice was distributed, even if it contained clearly false information, it was relatively simple for NVE to counter it by sending notices that '6 Hour POWER' had not been recalled." *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d at 741. Therefore, even if liability were found, NVE would at best only be entitled to recover its actual costs in responding to the Letter with corrective advertising ($19,642).

## III. DEFENDANT'S COUNTERCLAIM AND DEFENSES

***NVE's Counterclaim***

The counterclaim of NVE, and described by Counsel for NVE, is as follows. NVE asserts that Living Essentials engaged in false advertising prohibited by Section 43(a) of the Trademark Act of 1946 (the Lanham Act), as amended, 15 U.S.C. § 1125(a) by disseminating a misleading "Legal Notice" to convenience stores and others in the industry nationwide.

To establish this claim, NVE must prove that:

(1) Living Essentials made a misleading statement(s) of fact concerning its own product or another's;
(2) the statement actually deceives a substantial portion of the intended audience;
(3) the statement is material in that it will likely influence the purchasing decisions of the intended audience;
(4) the statement was introduced into interstate commerce; and
(5) there is some causal link between the challenged statement and harm to NVE.

*Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 323 (6th Cir. 2001). A statement may be "misleading" if it is "literally true, yet deceptive." *Id.* at 323.

***NVE's Defenses to Living Essentials' Claim***

NVE's defenses to Living Essentials' trademark infringement claim are: non-infringement (failure of proof on one or more elements of the trademark infringement claim), no entitlement to monetary relief, and unclean hands.

## IV. STIPULATION OF FACTS

1. Plaintiff, Innovation Ventures, LLC (hereinafter "Living Essentials" or "LE"), is a Michigan limited liability company, having its principal offices at 38955 Hills Tech Drive, Farmington Hills, MI 48377.

2. N.V.E., Inc. is a New Jersey corporation, having its principal place of business at 15 Whitehall Road, Andover, New Jersey.

3. Manoj Bhargava is the founder and Chief Executive Officer of Living Essentials.

4. Living Essentials sells the energy shot having the name "5-hour ENERGY."

5. 5-hour ENERGY is a valid and protectable trademark.

6. When Living Essentials first began selling 5-hour ENERGY shots, those shots were also marked with Living Essentials' Chaser trademark.

## V. ISSUES OF FACT TO BE LITIGATED

**Living Essentials contends the following issues of fact remain:**

***TM Infringement***

1. Is NVE's use of 6 Hour POWER likely to cause confusion as to source, affiliation, or sponsorship with Living Essentials' 5-hour ENERGY trademark?

2. The monetary recovery to which Living Essentials is entitled based on NVE's alleged infringement of the 5-hour ENERGY trademark as described in paragraph 1 above, including damages and NVE's profits from the infringement.

3. Whether NVE's alleged infringement of the 5 Hour Energy Trademark was willful?

***False advertising***

4. Did LE make a misleading statement of fact concerning 6 hour POWER?

5. Did the statement actually deceive a substantial portion of the intended audience?

6. Is the statement material in that it would actually influence a deceived consumer's (i.e., individual store owners) purchasing decision?

7. Were the advertisements introduced into interstate commerce?

8. Is there some causal link between the challenged statements and the alleged harm to NVE?

9. The cost of NVE's corrective advertising, if any, to which NVE is entitled based on the LE's issuance, dissemination, and publication of the challenged statement?

10. The marketplace damages, if any, to which NVE is entitled based on the LE's issuance, dissemination, and publication of the challenged statement?

**NVE contends the following issues of fact remain:**

***Trademark Infringement***

1. When Living Essentials first used the CHASER 5-hour ENERGY trademark in commerce.

2. When Living Essentials stopped using the combined word mark CHASER 5-hour ENERGY on its products.

3. When Living Essentials first used the 5-hour ENERGY trademark in commerce without combining it with the CHASER trademark.

4. Whether Living Essentials was using the 5-hour ENERGY trademark at all before NVE entered the market in March 2006.

5. Whether the 5-hour ENERGY trademark was weak with a limited scope of protection before NVE entered the market in March 2006.

6. In what geographic area or areas Living Essentials made substantial use of the 5-hour ENERGY trademark before NVE entered the market in March 2006.

7. Whether there is a likelihood of confusion between the CHASER 5-hour ENERGY trademark and the Stacker 2® 6 Hour POWER trademark.

8. Whether there is a causal link between the alleged infringement by NVE and Living Essentials' claimed damages.

***False Advertising***

9. Whether Living Essentials' engaged in false advertising by publishing and mailing a misleading "Legal Notice":

    (a) Whether Living Essentials made a misleading statement of fact in the Legal Notice concerning other 6 Hour products or NVE's products;
    (b) Whether the statement actually deceives a substantial portion of the intended audience(s);
    (c) Whether the statement is material in that it will likely influence the purchasing decisions of the intended audience;

(d) Whether the statement was introduced into interstate commerce; and

(e) Whether there is some causal link between the challenged statement and harm to NVE.

10. The amount of monetary damages caused by Living Essentials' false advertising.

11. Whether Living Essentials' false advertising was willful.

## VI. ISSUES OF LAW TO BE LITIGATED

**Living Essentials contends the following issues of law remain:**

1. The scope of a permanent injunction to be entered against NVE.

2. Whether this is an exceptional case within the meaning of 15 U.S.C. § 1117?

3. The amount of NVE's profits based on the infringement, and whether the total amount of recovery to plaintiff should be trebled?

4. Whether LE should be awarded its attorneys' fees under 15 U.S.C. § 1117?

5. Whether NVE is entitled to rely on new (lower) expert calculations of its profits that were not disclosed until after the close of supplemental discovery?

6. Whether NVE is precluded pursuant to Fed. R. Civ. P. 26(a), (e) and 37(c)(1) from seeking damages that were not timely disclosed? (*See* Dkt. No. 451).

**NVE contends the following issues of law remain:**

1. The scope of corrective advertising that Living Essentials should be required to provide.

2. Whether the amount of recovery to NVE should be trebled.

3. Whether NVE should be awarded its attorneys' fees under 15 U.S.C. § 1117.

4. Whether Living Essentials should be permitted to assert an unclean hands defense to NVE's false advertising claim when trademark infringement (if so found by the jury) cannot be a basis for unclean hands and Living Essentials failed to pursue or disclose any details of an unclean hands defense in discovery.

## VII. EVIDENCE PROBLEMS LIKELY TO ARISE AT TRIAL

### (A) LE's Likely Evidentiary Issues

1. Attempts to Introduce Double Hearsay Evidence. For example, NVE includes on its exhibit list No. 1177 that is an email from Jeff Guernsey to NVE that states that: "I have fielded NUMEROUS calls already. [NVE's] product is being yanked from the shelves in DROVES and being given back to the wholesalers." This is clearly hearsay which is evidenced by the Jeff Guernsey declaration. Mr. Guernsey explains that the "number of such inquiries received by J&S Distributors was less than five (5)." Mr. Guernsey further explained that: "No customers of J&S Distributors returned any of NVE's 6 Hour Power product based specifically on the June advertisement of Living Essentials regarding the recall of the 6 Hour Energy shot."

2. Attempts to Introduce Irrelevant and/or Prejudicial Written Court Opinions. During the previous Final Pretrial Conference, the Court has stated that Court Opinions would not be permitted as evidence. (Final Pretrial Conf. (March 2, 2015), Tr. at p. 57.)

3. Protection of Highly Confidential Business Information of the Parties.

4. Subject to the Court's ruling, whether NVE is prohibited from introducing alleged evidence of its equitable defense of unclean hands to the jury that is not relevant and will only serve to confuse the jury and prejudice Living Essentials.

5. Whether NVE should be precluded from offering any testimony or evidence regarding any FDA, FTC, NAD or state attorney general investigations or lawsuits related to 5-hour Energy.

6. Whether NVE should be precluded from offering testimony from Richard Deer, when NVE did not identify Mr. Deer as a potential witness until after the close of supplemental discovery.

7. Whether Richard Deer, who was employed by a competitor unrelated to either party (BDI Pharmaceuticals), has any relevant testimony to offer in this case.

8. Whether NVE should be precluded from offering any testimony or evidence regarding any baseless assertions or claims that 5-hour Energy caused any deaths.

9. Whether NVE should be precluded from introducing a demonstrative of what it represents is a convenience store front counter with no foundation, basis, or supporting evidence.

10. Motion to preclude NVE from presenting damages theories and figures never disclosed in discovery or by its expert. (*See* Dkt. No. 451).

11. Whether NVE should be precluded from introducing deposition transcripts taken in other cases where Living Essentials did not have the opportunity to question such individual regarding the issues in this case. Whether such testimony is admissible only for limited impeachment purposes.

12. Subject to the Court's ruling, whether NVE should be precluded from presenting evidence of unclean hands to the jury, when unclean hands is a matter reserved exclusively for the Court.

13. NVE may not challenge the Second Sarel Survey based on *Daubert*. NVE has waived its Daubert challenge as found by the Court.

14. NVE's continued attempt to improperly inject proceedings before the U.S. Patent and Trademark Office contrary to the motion *in limine* ruling of the Court.

15. Whether NVE is precluded from presenting evidence regarding or referencing the Court's order Granting NVE's Motion *in limine* to Exclude Expert Witness Dr. Dan Sarel's first report (Dkt. No. 404 at 17-21).

**(B) NVE's Likely Evidentiary Issues**

1. Any evidentiary issue that has not yet been resolved by the Court, including unresolved objections to the parties' exhibits such as (but not limited to): NVE's objections to certain of Living Essentials' "actual confusion evidence" on hearsay grounds and NVE's objection to the introduction of the Joe Reeser affidavit as evidence at trial.

2. An evidentiary issue will arise in the event that Living Essentials objects to NVE's introduction of Judge Borman's Recall Order as evidence since NVE's false advertising claim is based on NVE's claim that Living Essentials' "Legal Notice" mischaracterized Judge Borman's Order. This was addressed at the January 26, 2016 pre-trial conference (*see* Tr. 41:10-42:12).

3. Regarding Living Essentials' issue #11 above, NVE believes it is proper to cross-examine Living Essentials' expert Dr. Sarel on instances where he has been precluding from testifying by Courts, but NVE agrees to not say to the jury that the presiding trial court judge in this case (Judge Berg) excluded Dr. Sarel's original report. This was addressed at the January 26, 2016 pre-trial conference (*see* Tr. 43:1-45:5; 49:21-50:12; 52:25-55:14).

4. NVE contends that Living Essentials should be precluded from asserting or offering any evidence of an alleged unclean hands defense to NVE's false advertising claim since trademark infringement (if so found by the jury) cannot be a basis for unclean hands and Living Essentials failed to pursue or disclose any details of an unclean hands defense in discovery.

5. NVE will object if LE attempts to introduce deposition testimony of Dr. Frank Gollop, NVE's antitrust expert at trial (the Sixth Circuit resolved the antitrust issues in its 2012 decision and are not at issue in this trial).

6. NVE will object and move to strike and/or request a corrective instruction from the Court if any Living Essentials witness refers to counsel (i.e., advice of counsel, discussion with counsel) as a justification for sending and publishing the "Legal Notice." This was discussed at the final pre-trial conference (Tr. 45:16-48:17; 51:16-52:24);

7. NVE notes that the parties have reduced the amount of deposition testimony that will be presented at trial and have also reduced their respective objections to such testimony. To the extent that there are any remaining objections to the scope of deposition testimony to be presented at trial, such objections will be summarized and presented to the Court on Monday, February 1, as ordered by the Court at the January 26 pre-trial conference.

## VIII. WITNESSES

### (A) Living Essentials' Witnesses

Living Essentials' Witness List is attached as Attachment A.

### (B) NVE's Witnesses

NVE's Witness List is attached as Attachment B.

## IX. EXHIBITS

### (A) Plaintiff's Exhibits

LE's exhibits are listed in Living Essentials Exhibit List, which is being filed contemporaneously with this Order in Attachment C. Objections to NVE's exhibits have been briefed and filed with the Court, and are summarized in a table at the end of Attachment C.

LE also relies upon the Exhibit List of Defendant, and may introduce any exhibits, or portions of exhibits, not offered by Defendant.

LE reserves the right to supplement the exhibit list before trial.

### (B) NVE's Exhibits

NVE's exhibits are listed in Attachment D to this Order. Objections to NVE's exhibits have been briefed and filed with the Court, and are summarized in a table at the beginning of Attachment D.

NVE also relies upon the Exhibit List of Living Essentials, and may introduce any exhibits, or portions of exhibits, not offered by Plaintiff.

NVE notes that the parties have agreed to provide demonstratives for their own witnesses by 6 p.m. the day before the witness testifies. The parties have further agreed that demonstratives used for cross-examination need not be disclosed prior to use.

NVE reserves the right to supplement the exhibit list before trial.

## X. DAMAGES

### (A) Living Essentials' Statement

Living Essentials states that it is entitled to damages for trademark infringement under 15 U.S.C. § 1117. Living Essentials' damages are outlined in detail in the Expert Report of Rodney Crawford issued to NVE on April 30, 2014 as required by the Court's Scheduling Order.

Living Essentials' damages for trademark infringement are specified as follows. Living Essentials is entitled its lost profits in the amount of at least $18,749,812. In the alternative, Living Essentials is entitled to NVE's profits in the amount of $53,532,550 less any directly deductible costs that can be proven by NVE. The details of Living Essentials' claims regarding the amount of its requested recovery is set forth in detail in the expert reports of Rod Crawford.

Living Essentials is also seeking a trebling of damages, attorney's fees, costs and pre- and post- judgment interest.

NVE for the first time puts in writing its new damages calculation in a written submission for the Court. Despite jointly submitting this JFPTO, LE expressly maintains its objection to NVE's untimely disclosure of its damages calculation <u>and</u> the admission of improper expert testimony by NVE officers Erling Jensen and Robert Occhifinto on NVE's alleged damages under a new methodology that is untimely, speculative, well outside their personal knowledge and experience, and based on undisclosed expert calculations.

**(B) NVE's Statement**

On its False Advertising counterclaim, NVE expects to request a minimum of $3.4 million in damages for the period from July 2008 through April 2009 based upon the damages report and testimony of Carl Degen.. The proofs at trial will include evidence by Living Essentials about the size of the wholesale market for energy shots, and evidence from NVE's executives as to NVE's loss of market share in that wholesale market resulting from the Legal Notice and the resulting lost profits suffered by NVE. NVE's executives will testify at trial that the gross sales that NVE lost from mid-2009 through the end of 2015 due to Living Essentials' false advertising was $260 million and, after deducting NVE's expenses, the profit number that NVE lost at the 9.2 percent market share level was approximately $91 million. Due to the willful nature of the false advertising, NVE also expects to request that the Court treble any monetary damages determined by the jury, award reasonable attorneys' fees as provided in the Lanham Act, and award pre-judgment and post-judgment interest on the monetary damages. The issue of NVE's damages has been extensively briefed, discussed by the parties and the Court on the record, and has been the subject of this Court's written Orders (Dkt. 404, 447).

## XI. TRIAL

**(A) JURY TRIAL**

The Court considered arguments that Living Essentials' claim for disgorgement of NVE's profits and NVE's unclean hands defense are equitable

matters that should not be presented to the jury. The Court previously concluded that it will receive advisory opinions from the jury on both issues. Dkt. 447. LE filed additional briefs on unclean hands and damages on Friday, January 29, 2016.

### (B) ESTIMATED LENGTH OF TRIAL

At the final pre-trial conference on January 26, 2016, the Court instructed the parties on how jury trial will proceed in this case, including setting the dates for trial, the duration of trial, allocation of time during the trial, the process for juror selection, the scope of direct and cross examination when a witness is called to the stand, etc. These instructions are incorporated into this JFPTO by reference. The Court notes that trial is set to begin on February 2, 2016 and end no later than March 3, with a total of seventeen trial days to be allocated as previously discussed by the Court and parties (Tr. 6:1-22).

## XII. SETTLEMENT

The parties held a settlement conference supervised by a Federal Judge in Detroit. The parties have also had several informal settlement discussions.

## XIII. JURY INSTRUCTIONS

The parties previously submitted proposed jury instructions and objections, proposed verdict forms, and voir dire questions. At the final pre-trial conference, the Court instructed that, on February 1, the parties shall submit revised proposed jury instructions and revised verdict forms.

## XIV. JUROR COSTS

The parties each acknowledge that the Court may assess juror expenses under LR 38.2.

**SO ORDERED**.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: February 8, 2016

**Certificate of Service**

I hereby certify that this Order was electronically submitted on February 8, 2016, using the CM/ECF system, which will send notification to each party.

s/A. Chubb
Case Manager

**BROOKS KUSHMAN P.C.**

By: /s/ Mark A. Cantor
Mark A. Cantor (P32661)
Marc Lorelli (P63156)
Thomas W. Cunningham (P57899)
Chanille Carswell (P53754)
Brian C. Doughty (P71652)
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Tel: (248) 358-4400 / Fax: (248) 358-3351
Email: mcantor@brookskushman.com
mlorelli@brookskushman.com
tcunningham@brookskushman.com
bdoughty@brookskushman.com
*Attorneys for Plaintiff*

**HONIGMAN MILLER SCWARTZ AND COHN LLP**

By /s/ Leigh C. Taggart w/ Consent
Leigh C. Taggart (P63765)
Emily J. Tait (P74708)
39400 Woodward Avenue, Suite 101
Bloomfield Hills, MI 48304
(248) 566-8508
ltaggart@honigman.com
etait@honigman.com

**NICOLL DAVIS & SPINELLA LLP**
Anthony J. Davis
95 Route 17 South
Suite 316
Paramus, NJ 07652
(201) 712-1616
ADavis@ndslaw.com
*Attorneys for Defendant-Counterclaim Plaintiff*